**UNITED STATES of America, Appellee,**

v.

**Daphney HENDERSON–DURAND, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Steven ARNOLD, Appellant.**

Nos. 91–3853, 92–1012.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1992.

Decided Feb. 12, 1993.

Kevin J. Short, Minneapolis, MN, argued for appellant Durand.

Scott F. Tilsen, Minneapolis, MN, argued for appellant Arnold.

Paul A. Murphy, Asst. U.S. Atty., Minneapolis, MN, argued for appellee.

Before McMILLIAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

Steven Arnold and Daphney Henderson–Durand (Durand) appeal from convictions for drug trafficking and conspiracy. Ar-

nold was convicted on three counts: (1) conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846; (2) possession with intent to distribute a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1); and (3) distribution of a mixture containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). Durand was convicted on the conspiracy and distribution counts.

Arnold and Durand each raise several challenges. Arnold contends that the district court[1] erred by denying his posttrial motion to dismiss the indictment because of government misconduct and by denying his motion to sever the joint trial. He also raises several objections to his sentence. Durand argues that the evidence does not support the jury's verdict that she was not coerced, the district court erred by denying her motion for severance, and the district court erred by failing to grant her request for a downward departure. We affirm.

## I.

These charges stemmed from an undercover operation conducted by Sergeant Jerome Jung of the St. Paul Police Department[2] in cooperation with one Orson Mattlock, a paid government informer. The facts leading up to the charges are quite complicated, but essentially involve three transactions and a series of phone calls that occurred in April 1991.

The first transaction occurred on April 9, 1991. That morning, Arnold, Durand, and Lester Sydney[3] met Jung on a side street in downtown St. Paul. While Arnold waited in the car, Sydney and Durand entered Jung's car. Once inside, Durand produced a bag of white powder, and snorted some of it up her nose. Jung refused to purchase the powder, however, because he wanted only crack cocaine. Sydney and Durand stated that they would "cook" the

cocaine into crack for Jung. Later that day, Jung recorded a telephone call with Sydney in which Sydney stated that he, Arnold and Durand would make the powder cocaine they tried to sell that morning into crack and sell it to Jung the next day.

On April 10, 1991, Jung went to Arnold's and Durand's apartment to pick up the cocaine. When he arrived, Sydney got into Jung's car. A short time later, another car arrived. Arnold, who was standing nearby, went to the other car and returned with a package of a white substance. Jung paid $3000 for the substance and left. When he brought the substance to the police station, Jung discovered that much of the "cocaine" was actually plaster. He then called Sydney and demanded the return of his money. Sydney replied that he would try to find Arnold to work out the situation.

The final transaction charged took place on April 24, 1991. Jung agreed to meet Arnold at Arnold's apartment at about 11:30 a.m. When he arrived, Arnold told him he would go inside and get the cocaine. Durand then came out, told Jung to pull the car around the corner, and waited with Jung for Arnold to return. When Arnold returned with the drugs, surveillance officers arrested both Durand and Arnold.

Durand and Arnold initially were charged on four counts. The count concerning the conduct on April 9, 1991, was dismissed because the substance Durand and Sydney possessed that day turned out to be baking soda, rather than cocaine. Durand was not charged in relation to the sale on April 10, 1991.

At trial, both defendants presented a coercion defense, claiming that the government's informant, Orson Mattlock, threatened to kill them and Durand's children if they did not sell drugs. The jury heard a telephone call recorded by Jung on April 11, 1991, in which Durand claimed that she

---

1. The Honorable Harry H. MacLaughlin, Senior United States District Judge for the District of Minnesota.

2. During this investigation, Sergeant Jung was assigned to the Federal Drug Enforcement Administration Task Force conducting drug related investigations in Minnesota.

3. Sydney was charged as a member of the conspiracy which included Arnold and Durand. He eventually testified against Arnold and Durand as part of a plea agreement.

had received a threat the prior evening, April 10, from a man she referred to as Otis (actually Orson Mattlock).

Jung testified that when he confronted Mattlock about the threats, Mattlock admitted that he said, in effect, "You f**k with me, and there won't be nobody alive in that building, not you, not the kids, not the roaches." Jung testified that he warned Mattlock not to make any further threats. Neither Jung nor Mattlock admitted making any other threats.

Arnold claimed there were several threats. He testified that both Mattlock and Jung threatened him on the evening of April 9, before the second transaction, and that Mattlock called on April 10 with another threat. On cross-examination, the government presented a pro se motion Arnold submitted to the clerk of court but never filed. The motion complained of a threat on April 10, 1991, but said nothing about a threat on April 9, 1991.

The jury convicted both defendants on all counts. At sentencing, the district court determined that Arnold was a second-time drug offender subject to sentence enhancement under 21 U.S.C. § 841, and that he was a career offender under U.S.S.G. § 4B1.1. The district court also denied motions by both defendants claiming that because they were coerced into committing the offense, they were entitled to a downward departure under U.S.S.G. § 5K2.12.

## II.

### A. Government Misconduct

██ Arnold argues that the district court should have granted his posttrial motion to dismiss the indictment because the threats made by the government's paid informant, Mattlock, constituted outrageous

government conduct in violation of the due process clause.[4] The government contends that Arnold had the opportunity to raise this claim in a pretrial motion and failed to do so. This failure, the government asserts, constitutes a waiver of the claim.

Motions seeking dismissal of indictments are governed by Federal Rule of Criminal Procedure 12(b)(2). The rule provides, in pertinent part, "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.... The following must be raised prior to trial: (2) Defenses and objections based on defects in the indictment or information...." Rule 12(f) further provides that "[f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof...." Other circuits have held that a defendant's failure to raise an outrageous government conduct claim in a pretrial motion pursuant to rule 12(b)(2) constitutes waiver of the claim. *United States v. Nunez–Rios*, 622 F.2d 1093, 1099 (2d Cir.1980); *United States v. Duncan*, 896 F.2d 271, 274 (7th Cir.1990) (outrageous government conduct claim not raised in a Rule 12(b)(2) motion reviewed only for plain error). Similarly, this court has held that motions seeking dismissal of an indictment must be raised in a Rule 12(b)(2) motion. *See, e.g., United States v. Easom*, 569 F.2d 457 (8th Cir.1978).

██ We believe that on the facts here presented, Arnold's failure to raise the outrageous government conduct claim until his posttrial motions constitutes waiver of that claim.[5]

Arnold had prepared before trial a pro se motion alleging outrageous government

---

4. Outrageous government conduct is a different defense than coercion, and therefore we must consider Arnold's claim even though the jury resolved the coercion issue against him. Outrageous government conduct is a question of law. It essentially is a claim that the government's conduct was so egregious that a prosecution based upon that conduct would violate due process. *See, e.g., United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973). The defense of coercion, on the other hand, is a question of fact for the trier.

In a coercion defense, the accused asserts that he did not have the intent to commit a crime; instead, the actions of another overcame his will and caused his actions. *See United States v. May*, 727 F.2d 764, 765 (8th Cir.1984).

5. Although the district court denied the motion on the merits, we affirm on the basis of waiver. *See, e.g., Thigpen v. Roberts*, 468 U.S. 27, 30, 104 S.Ct. 2916, 2918, 82 L.Ed.2d 23 (1984).

conduct. This motion was sent to the clerk of court, but was not filed. At the motions hearing before the magistrate judge, the government brought this motion to the attention of the court and defense counsel. In response to the magistrate judge's question about the motion, Arnold's counsel replied: "Your honor, they were never filed and they're not going to be filed." The government then informed Arnold's counsel that one of the motions alleged government misconduct. The government suggested that Arnold have an opportunity to interview the informant to further explore the issue and to file additional motions if he so chose. In response to the magistrate judge's question, Arnold's counsel reiterated the decision not to file the pro se motion.

Arnold's counsel did interview the informant, per the government's suggestion. This interview occurred two weeks prior to trial. Arnold did not, however, file before trial additional motions raising the issue of outrageous government conduct. Arnold also failed to raise this defense in motions made at the close of the government's evidence and at the close of all the evidence. Only after the jury returned a verdict against Arnold did he raise the outrageous government conduct argument in a posttrial motion.

Arnold thus knew of the basis for the outrageous conduct claim at least six weeks before trial, and of the specific facts two weeks before trial. The government urged that he be given an opportunity to file additional motions. Instead, Arnold proceeded to trial and used the very facts now said to constitute outrageous government conduct to present a coercion defense, which the jury rejected. We do not believe that having chosen to take his case to the jury, Arnold may now contend that the jury never should have heard the case.

### B. Arnold's Motion for Severance

Arnold also contends that the district court erred by denying his motion for sev-

erance after it refused to admit certain evidence. Arnold testified on direct examination that he received Mattlock's threat on April 9, 1991, before the first drug sale on April 10. On cross-examination, the government confronted him with his pro se motion, which stated that the threat occurred after the April 10, 1991, drug transaction.[6] On redirect, Arnold sought to introduce the entire document to demonstrate that the government had quoted sections out of context.[7] Durand objected, stating that the document was prejudicial to her.

The government suggested that Arnold offer pages three, four, and five of the document, as they did not refer to Durand but contained all the facts in question. This option was acceptable to both Durand and the court; however, Arnold's counsel would not offer less than the whole document. Arnold then moved for severance, claiming that the joint trial prejudiced his ability to introduce this necessary evidence. The court denied his motion.

■ We believe that the court did not abuse its discretion in denying the motion for severance. We will not disturb a district court's denial of a severance motion unless the defendant can demonstrate an abuse of discretion prejudicing his right to a fair trial. *United States v. O'Meara*, 895 F.2d 1216, 1219 (8th Cir.), *cert. denied*, 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). Here, the district court would have allowed Arnold to introduce pages three, four, and five of the document, which contained the facts relevant to the issue in question. Arnold refused to do so. The district court further stated its belief that the additional pages Arnold wished to introduce were irrelevant to the issue in question. Any prejudice Arnold suffered thus stemmed not from the court's ruling or the joint trial, but from Arnold's decision

---

6. The government used the document solely to impeach Arnold's version of the story. It did not offer the contents of the document as substantive evidence, and, as Arnold did not deny the document, the government did not seek to have the document itself admitted into evidence.

7. Prior to trial, Arnold's counsel stated his belief that the document was inadmissible on work product grounds. Neither party had moved for severance based on this document prior to the motion made here.

not to introduce pages three, four, and five of the document. Because the court would have admitted all evidence relevant to the issue on which Arnold claims he suffered prejudice, the court did not err in denying the motion for severance.

Arnold raises several challenges to the district court's determination that he was a career offender, all of which are without merit.[8]

### C. Durand's Coercion Defense

Durand contends that her conviction must be reversed because no reasonable jury could conclude beyond a reasonable doubt that her actions were the product of her own will rather than Mattlock's threats. We disagree.

In this case, the district court instructed the jury on the defense of coercion. The government thus bore the burden of proving beyond a reasonable doubt that Durand's actions were not the product of coercion. The jury's verdict demonstrates that it believed the government carried that burden.

In reviewing this verdict, we must examine the evidence in the light most favorable to the government, and give it the benefit of all reasonable inferences. *United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir.1990). We can reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* This standard is a strict one, and a jury verdict should not be overturned lightly. *United States v. Knife*, 592 F.2d 472, 475 (8th Cir.1979).

We believe there is sufficient evidence to support the jury's conclusion. First, the testimony of Lester Sydney provided a basis for the jury to conclude that Durand was involved in a conspiracy to sell drugs before any threats were made. Sydney testified that before the transaction with Jung on April 9, 1991, he contacted Arnold in an attempt to obtain cocaine. He stated that when Arnold was unable to obtain any, Sydney, Arnold, and Durand decided to sell Jung baking soda instead. From this evidence, the jury could have concluded that Durand was involved in a conspiracy to sell drugs on April 9, before any threats were made. Second, in order to make out a coercion defense, Durand must show that she was faced with a danger that could be avoided only by committing a criminal act. The April 24, 1991, transaction occurred nearly two weeks after Mattlock's threat. During the intervening period, nothing happened to either Durand or Arnold. Moreover, the threat did not demand her participation in a drug sale. From the evidence presented, the jury could have concluded that Durand could have simply refused to participate in the April 24, 1991, transaction without any adverse consequences.

### D. Durand's Motion for Severance

Durand also claims the district court erred by failing to grant her motion for severance. She claims that evidence admissible only against Arnold "spilled over" against her, and thus prejudiced her case. We disagree.

The general rule is "that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Severance is required only upon a showing of

---

8. Arnold's contention that one of the predicate offenses used to enhance his guideline sentence was unconstitutional is barred by our decision in *United States v. Hewitt*, 942 F.2d 1270 (8th Cir.1991) (holding conviction must have been held invalid in prior proceeding to be invalid for sentencing guideline purposes). *Cf. Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). His arguments that a prior felony conviction for introducing drugs to a penal facility in Missouri does not constitute either a prior "felony drug offense" under 21 U.S.C. § 841 or a "controlled substance offense" under U.S.S.G. § 4B1.2(2) are likewise without merit. We find this court's decision in *United States v. Pazzanese*, 982 F.2d 251 (8th Cir.1992), to be distinguishable. Pazzanese was convicted of criminal facilitation, an offense not limited to regulation of drugs and requiring no specific intent to commit the crime. Conversely, Arnold violated a state law which specifically prohibited certain drug activity.

real prejudice to the defendant, i.e., when defenses are irreconcilable or the jury will not be able to compartmentalize the evidence against the two defendants. *United States v. Lara*, 891 F.2d 669, 671 (8th Cir. 1989); *United States v. Adkins*, 842 F.2d 210, 212 (8th Cir.1988). Here, the proof of the charges against both defendants arises from the same incidents, and they raised the same defense, coercion.[9] Their defenses were not irreconcilable. Moreover, we do not believe that the jury had difficulty compartmentalizing the evidence in this case. The case involved only two defendants and three counts. The judge twice instructed the jury that it must consider each count and each defendant individually. Severance is not required in such a simple case. *See United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990); *United States v. O'Connell*, 841 F.2d 1408, 1431 (8th Cir.), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988). We believe that our discussion of the evidence supporting Durand's conviction forecloses her further argument that severance was required because the evidence against her was insufficient.

### E. Denial of Downward Departure

Both Arnold and Durand challenge the district court's denial of their motion for a downward departure from the guideline sentence under U.S.S.G. § 5K2.12. This section provides for a departure when the defendant "committed the offense because of serious coercion, blackmail, or duress, under circumstances not amounting to a complete defense." *See* U.S.S.G. § 5K2.12. This ground for departure is broader than the defense of duress, as it does not require immediacy of harm or inability to escape, and allows the district court to consider the subjective mental state and personal characteristics of the defendant in its determination.

The defendants claim that the district court failed adequately to account for these factors in determining that a downward departure was unwarranted. We review a denial of a downward departure only to determine whether the district court properly applied the Sentencing Guidelines; we do not review its determination that a departure was not warranted. *United States v. Olson*, 931 F.2d 1250, 1252 (8th Cir.1991); *United States v. Evidente*, 894 F.2d 1000, 1003-04 (8th Cir.), *cert. denied*, 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990). The district court correctly recognized its authority to depart under § 5K2.12. It considered the circumstances surrounding the threats, and considered the effect of those threats on the defendants' actions. After hearing all the evidence, including Arnold's testimony about the threats and recordings of telephone calls in which Durand discussed the threats, the district court determined that the defendants had not shown that coercion was the motivation for the defendants' offenses. The district court properly applied the guidelines, and therefore we affirm.

---

9. Durand's claim that the defendants' defenses were irreconcilable because of Arnold's attempt to introduce into evidence his pro se motion is without merit. First, Arnold was attempting to introduce the document in order to support his contention that his actions were coerced, the same defense Durand raised. Second, we do not believe the use of the document prejudiced

Durand in a manner requiring severance. None of the testimony surrounding that document implicated Durand. Moreover, the trial court ruled that pages one and two of the document were inadmissible specifically because they might prejudice Durand. Thus, the defenses were not irreconcilable.