No. 95-3069

United States of America,   *
                                    *
              Appellee,     *
                                    *
        v.                *
                                    *
Kenneth Michael Shaw,     *
                                    *
              Appellant.    *


No. 95-3094

United States of America,   *
                                    * Appeals from the United States
              Appellee,     * District Court for the
                                    * District of Minnesota.
        v.                *
                                    *
Jeffrey Lane Barnes,      *
                                    *
              Appellant.    *


No. 95-3096

United States of America,   *
                                    *
              Appellee,     *
                                    *
        v.                *
                                    *
Tina Mariam Scott,       *
                                    *
              Appellant.    *

No. 95-3177

United States of America,　*
　　　　　　　　　　　　　*
　　　　　　Appellee,　　*
　　　　　　　　　　　　　*
　　　　v.　　　　　　　*
　　　　　　　　　　　　　*
Alphonso Ray Tucker, also　*
known as Chopper,　　　*
　　　　　　　　　　　　　*
　　　　　　Appellant.　　*


No. 95-4164

United States of America,　*
　　　　　　　　　　　　　*
　　　　　　Appellee,　　*
　　　　　　　　　　　　　*
　　　　v.　　　　　　　*
　　　　　　　　　　　　　*
Robert Lee Slater, Jr., also　*
known as Rob,　　　　*
　　　　　　　　　　　　　*
　　　　　　Appellant.　　*


Submitted:　June 11, 1996

Filed:　August 23, 1996


Before BEAM and HEANEY, Circuit Judges, and BOGUE,[1] District Judge.


HEANEY, Circuit Judge.


[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

2

I.

The appellants' convictions stem from an extensive investigation by state and federal law enforcement agencies into the criminal activities of Jeffrey Lane Barnes, Kenneth Jones, and others who authorities believed were responsible for a major drug distribution operation and several drug-related murders. On May 23, 1995, Barnes, Tina Mariam Scott, Alphonso Ray Tucker, Kenneth Michael Shaw, and Robert Lee Slater, Jr. were charged by revised superseding indictment with conspiring to possess with intent to distribute and conspiring to distribute in excess of five kilograms of cocaine and in excess of fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).[2] The conspiracy charge carried a mandatory minimum penalty of ten years imprisonment and a maximum penalty of life in prison. All five appellants were also charged in multiple counts with using a communication facility for the commission of a felony in violation of 21 U.S.C. § 843(b). In addition, Barnes was indicted on eight counts of possession with intent to distribute and/or distribution of cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B); Tucker was charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). Finally, the indictment charged Barnes with one count of using a minor to distribute cocaine base and marijuana in violation of 21 U.S.C. § 861(a)(1).

Scott, Shaw, and Slater entered into plea agreements with the government prior to trial whereby each pleaded guilty to one count of using a telephone to commit the crimes of possession with the

---

[2]The grand jury returned the original indictment on September 21, 1994. The government filed a revised indictment on November 23, 1994. Six other individuals, not parties to this appeal, were also named in the indictment. For clarity, we discuss only the charges and the proceedings that pertain to the appellants.

3

intent to distribute and distribution of cocaine base.[3]  The government dismissed the remaining charges against them.  The court sentenced them to prison terms of twenty-one months, fifteen months, and thirty months, respectively.

Barnes and Tucker were tried by a jury in United States District Court, District of Minnesota, from May 10 through May 18, 1995.  The jury found Barnes guilty on all counts; Tucker was acquitted on one charge of illegal telephone use and found guilty on all remaining counts against him. The court sentenced Barnes to a prison term of 242 months and Tucker to eighty-four months imprisonment.

Barnes challenges his conviction and sentence; Tucker appeals only his conviction; Scott, Shaw, and Slater challenge their sentences. Together, the appellants claim: (1) the government failed to establish the necessity of using telephone wiretaps; (2) the actions of a paid government informant amounted to outrageous government conduct; (3) the government's cross-examination of Tucker about his alleged promotion of prostitution prejudiced the verdict against him; (4) the evidence was insufficient to support Barnes' and Tucker's convictions; (5) the court erred by refusing to give Scott and Shaw mitigating-role sentence adjustments; and (6) the court erred by not departing downward on the theory that Slater's criminal history score dramatically overrepresented the seriousness of his prior criminal history.  We affirm.

---

[3]Shaw entered into a plea agreement with the government on May 2, 1995 and admitted to conduct involving 0.2 grams of cocaine base; Scott's agreement is dated May 9, 1995 and connects her to more than one gram and less than two grams of cocaine base.  Both Shaw and Scott agreed to cooperate with the government in the prosecutions of their co-defendants.  Slater entered into a plea agreement with the government on July 19, 1995 without promising to cooperate with the government against his co-defendants.  Slater admitted that his offense involved at least .25 grams but less than .50 grams of cocaine base.

4

II.

At trial, the government introduced seventy-four recorded telephone conversations as evidence of both the drug conspiracy and using a communication facility for commission of a felony.[4] Barnes moved to suppress the evidence at trial and now appeals the denial of that motion. Barnes argues that the police affidavit used to secure the wiretaps did not establish necessity as required by 18 U.S.C. § 2518. We review the district court's determination for clear error. See United States v. Macklin, 902 F.2d 1320, 1327 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991).

An application for an order authorizing a wiretap must include, among other requirements, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This necessity requirement ensures "that wiretaps are not routinely employed as the initial step in an investigation," but "does not require that law enforcement officers exhaust all possible techniques before applying for a wiretap." Macklin, 902 F.2d at 1326. The district court rejected Barnes' argument that the affidavit was conclusory, was filled with boilerplate language, and failed to establish the necessity of the wiretaps. The forty-five page affidavit recounts details of a long investigation into the suspected criminal activity, which included murder, of Barnes and

---

[4]The recordings were the fruits of five intercept orders involving three different telephone numbers: (1) an initial order dated November 12, 1993 authorizing a wiretap on the telephone of the residence where Barnes lived; (2) an order dated December 10, 1993 authorizing the continuation of the wiretap on Barnes' telephone; (3) an initial order dated December 17, 1993 authorizing a wiretap on the telephone of the residence where Kenneth Jones lived; (4) an initial order dated January 15, 1994 authorizing a wiretap on the telephone of the residence where Russell Barnes lived; and (5) an order dated January 23, 1994 authorizing the continuation of the wiretap on Jones' telephone.

others believed to be part of a tight-knit, violent group.  According to the affidavit, authorities had attempted to infiltrate the organization for more than three years before applying for a wiretap.  Ordinary measures used by authorities in the investigation, including ballistics reports, interviews with witnesses, confidential informants, surveillance, and pen registers, had proved unsuccessful; other measures, such as search warrants and increased undercover operations, were deemed either likely to fail or too dangerous.  We hold that the court did not err in determining that the affidavit set out the need for the electronic surveillance in sufficient detail and declining to suppress the wiretap evidence.

### III.

Barnes also argues that the behavior of Ronald Caldwell, a paid government informant who took drugs from controlled purchases for his own use, amounted to outrageous government conduct.[5]  Barnes raises this claim for the first time on appeal.  We agree with the government that, under the facts of this case, Barnes' failure to raise the claim in the district court constitutes a waiver.

Barnes had notice prior to trial of Caldwell's drug misappropriation and dishonest behavior.  On May 4, 1995, six days before the start of trial, the government provided defense counsel

---

[5]Although unclear in his brief, Barnes seems to request suppression of Caldwell's testimony as his only form of relief.  We note that the typical relief sought for outrageous government conduct is dismissal of the prosecution.  See United States v. Henderson-Durand, 985 F.2d 970, 973 n.4 (8th Cir. 1993) (explaining outrageous government conduct "essentially is a claim that the government's conduct was so egregious that a prosecution based upon that conduct would violate due process"), cert. denied, 510 U.S. 856 (1993); United States v. Lard, 734 F.2d 1290, 1296 (8th Cir. 1984).  Given our disposition of this issue, however, we need not reach the question of what relief would be appropriate.

with a letter revealing Caldwell's misconduct. Moreover, Caldwell's testimony at trial is filled with admissions, including that he took drugs for his personal use from FBI-financed drug purchases, Trial Tr. at 185, 191, 203, 214, that he lied to agents about his conduct, id. at 187, 211, 264, and that on at least one occasion, he was too high during a controlled purchase to remember who actually provided him with the drugs, id. at 241. Rather than object to Caldwell's conduct at the time of trial, the defendants gambled that the jury would discount his testimony. Considering all the facts of this case, particularly the fact that Barnes was fully aware of the basis for a claim of outrageous government conduct, we hold that Barnes has waived his claim of outrageous government conduct. See United States v. Henderson-Durand, 985 F.2d 970, 973-74 (8th Cir.) (failure to raise outrageous government conduct claim until post-trial motion constituted waiver where defendant knew of factual basis for claim but proceeded to trial using the same facts to present coercion defense), cert. denied, 510 U.S. 856 (1993).

IV.

Tucker argues that the verdicts against him were prejudiced by the government's cross-examination of him about his alleged activities as a pimp. We review the district court's decision to permit the cross-examination for an abuse of discretion. See United States v. Ojeda, 23 F.3d 1473, 1477 (8th Cir. 1994).

Tucker testified in his own defense. When asked about his employment history by his lawyer, Tucker stated that he ran a business, Touch of Class, whereby he provided bars around the country with male and female exotic dancers. Trial Tr. at 410. On cross-examination, over defense counsel's objection, the government asked Tucker whether Touch of Class was a front for prostitution. Tucker denied the accusation. Id. at 445. To impeach his credibility, the government showed Tucker a transcript of an

7

intercepted telephone call in which he talked about the amount of money he makes per night off of women. Id. at 446. Tucker continued to deny that he promoted prostitution, and the government moved on to a different line of inquiry. Id. at 447.

The government's cross-examination consisted of a limited exploration into the nature of Tucker's employment, an issue raised by Tucker. It then sought to impeach his testimony using his prior inconsistent statements. The government, however, did not cross the line into offering improper extrinsic evidence to prove that Tucker was in fact a pimp. See United States v. Roulette, 75 F.3d 418, 423 (8th Cir. 1996) (impermissible to introduce extrinsic evidence of prior to impeach witness on a collateral matter). Moreover, after Tucker again denied involvement in promoting prostitution, the government did not raise the issue again despite the fact that Tucker's lawyer questioned other defense witnesses about Tucker's business. See Trial Tr. at 469 (testimony of Tucker's stepfather); id. at 471-72 (testimony of Touch of Class employee). Under the circumstances, the court did not abuse its discretion by allowing the limited inquiry into the nature of Tucker's business.

V.

Both Barnes and Tucker challenge the sufficiency of the evidence against them. Barnes asserts that the testimony of his nephew, Russell Barnes, was insufficient for the jury to convict him of distributing crack cocaine to his nephew. Tucker challenges the evidence with respect to each of his convictions. When reviewing the sufficiency of the evidence to sustain a conviction, we view the evidence in a light most favorable to the guilty verdict. See United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995). The appellants must show that no reasonable jury could have found them guilty beyond a reasonable doubt. See United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995). Having

8

carefully reviewed the record, we hold that the evidence is sufficient to support Barnes' and Tucker's convictions.

VI.

Both Scott and Shaw challenge the sentences imposed by the district court. Specifically, they argue the court erred by denying their requests for minor-role reductions under section 3B1.2 of the sentencing guidelines.[6] Because a participant's status involves a factual determination, not a legal conclusion, <u>United States v. Garvey</u>, 905 F.2d 1144, 1146 (8th Cir. 1990), we must accept the district court's factual findings regarding the appellants' role in the offenses unless they are clearly erroneous. <u>See</u> <u>United States v. Copeland</u>, 45 F.3d 254, 256 (8th Cir. 1995).

We agree that neither Scott nor Shaw appears to have played a major role in the overall drug conspiracy, as opposed to their counts of conviction for using a communication facility to facilitate a drug crime. Scott had been involved in a long-term, sometimes abusive, relationship with Barnes. The couple lived together until 1993 and has two children. Scott's conviction related to four telephone conversations she had with a girlfriend in which she relayed messages to and from Barnes to facilitate her friend's purchase of crack cocaine from Barnes. In one conversation, Scott stated that some of her money was tied up in

---

[6]The guidelines provide that a defendant is entitled to a four-level decrease if she was a "minimal participant" in the criminal activity. U.S.S.G. § 3B1.2(a). A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment (n.1). A two-level decrease is appropriate if the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A minor participant is any person who is less culpable than most other participants but whose role cannot be described as minimal. U.S.S.G. § 3B1.2, comment (n.3). For cases falling between (a) and (b), a three-level decrease is appropriate. U.S.S.G. § 3B1.2.

9

the drugs.  Shaw, a drug user, was convicted for ordering .02 grams of crack cocaine from Barnes over the telephone.

At their respective sentencing hearings, Scott and Shaw each moved for adjustments on the theory that they played mitigating roles in the offenses.  See U.S.S.G. § 3B1.2.  The district court found that while Scott's role in the overall conspiracy might have been minor, she was an average participant in the telephone transaction.  Scott Sentencing Tr. at 6.  Similarly, the court found that despite the small drug quantity involved in the transaction, Slater did not play a minor role in the illegal telephone use.  Rather, according to the district court, Shaw "would really be viewed as an average participant rather than playing a minor or other mitigating role."  Shaw Sentencing Tr. at 5.

The district court's findings are not clearly erroneous and the court did not err by declining to grant Scott and Shaw minor-role adjustments. Both Scott and Shaw used the telephone to negotiate a drug transaction, making them neither more nor less culpable than the average person who commits the same offense.  With respect to the fact that the quantities of drugs involved in the transactions were small, we note that the guidelines already account for this fact:  The sentence for a section 843(b) violation depends directly on the drug quantity involved.  See U.S.S.G. § 2D1.6 (1994).  Although this result might have been different if Scott and Shaw had been convicted of conspiracy, the court did not err in determining that Scott's and Shaw's roles in their offenses of conviction warranted no sentencing reductions.

VII.

Finally, Slater appeals the district court's refusal to depart downward on the theory that Slater's criminal history category overrepresented the true seriousness of his criminal background.

10

Slater had twenty-five adult convictions earning him twenty criminal history points under the guidelines. The bulk of his prior convictions were for thefts in which Slater stole property to support his crack cocaine addiction. The district court indicated that it was aware that it had authority to depart downward if it concluded that the criminal history category overrepresented the seriousness of Slater's criminal history or the likelihood that he will commit future crimes. Slater Sentencing Tr. at 8. Nonetheless, the court stated:

> I simply cannot do that. I think as the presentence investigation report points out, in addition to the series of crimes to which the defendant is receiving points, there are other criminal activities that are not calculated in here, and I think when you look at the totality of the defendant's criminal history, category six is the appropriate designation for him.

Id. at 9. As Slater conceded at oral argument, the court's discretionary decision not to depart downward under section 4A1.3 is unreviewable. See United States v. Hall, 7 F.3d 1394, 1396 (8th Cir. 1993). Therefore, we affirm Slater's sentence.

## VIII.

In conclusion, we hold: (1) the government properly established the necessity of the wiretap, (2) Barnes waived his claim of outrageous government conduct, (3) the court did not err by permitting limited cross-examination of Tucker on the question of his promotion of prostitution, (4) Barnes' and Tucker's convictions were supported by substantial evidence; (5) the court did not err by declining to give Scott and Shaw mitigating-role sentencing adjustments, and (6) the court's discretionary decision not to depart downward on the theory that Slater's criminal history score overstated the seriousness of his criminal background is unreviewable by this court. Therefore, we affirm the appellants' convictions and sentences.

11

A true copy.

   Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.