# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2338

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Cleophus Jordan, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted:  February 1, 1999
Filed:  March 19, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

PER CURIAM.

After a jury found Cleophus Jordan guilty of possessing cocaine base with intent to distribute, the district court[1] sentenced him to 240 months imprisonment and ten years supervised release.  Jordan appeals his conviction and sentence, and we affirm.

Jordan first argues that the district court erred in denying his motion to suppress physical evidence.  We review for clear error the facts supporting a district

_____

[1]The HONORABLE PAUL A. MAGNUSON, Chief Judge, United States District Court for the District of Minnesota.

court's denial of a motion to suppress, and review de novo the legal conclusions based upon those facts, see United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir.), cert. denied, 118 S. Ct. 1823 (1998), giving due weight to inferences drawn by resident judges and local law enforcement officers from such historical facts, see United States v. Ball, 90 F.3d 260, 262 (8th Cir. 1996). At the suppression hearing, the government's witnesses testified as follows.

On August 29, 1997, Minneapolis Police Sergeant James Murphy, a twenty-four year veteran of narcotics enforcement, received an anonymous tip that a Chevy Blazer with tinted windows and Michigan plates had just arrived from Detroit with over $80,000 in crack cocaine in hidden compartments, and that the Blazer was parked behind a specified address and was to depart soon. Sergeant Murphy and several narcotics officers immediately went to the address, and noticed a Chevy Tahoe with tinted windows and Michigan plates parked behind the address. The address was associated with drug activity, and was in the vicinity of "a lot" of crack houses; moreover, police knew that "Detroit Boys"--small, tightly knit groups that brought drugs from Detroit--actively sold drugs in the area. Shortly after the officers' arrival, a person later identified as Jordan drove the Tahoe in a manner that in Sergeant Murphy's experience suggested Jordan was trying to determine whether he was being followed.

After a marked squad car stopped the Tahoe, uniformed officers asked Jordan to step out of the vehicle. The officers then placed Jordan against the Tahoe, ordered him to put his hands over his head, and escorted him towards the squad car. When Sergeant Murphy looked through the Tahoe's passenger window and noticed a digital scale, Jordan was arrested and during an ensuing search, over $1,000 in $10 and $20 bills was seized from his person. The Tahoe was then subjected to a canine sniff, which indicated the presence of drugs. After obtaining a warrant, authorities found over 120 grams of crack cocaine hidden along the Tahoe's running boards.

At a minimum, the officers had reasonable suspicion to stop the vehicle based on information verifying the anonymous tip, as well as Sergeant Murphy's knowledge about drug activity in the area and his belief that Jordan was engaging in counter-surveillance. See United States v. Johnson, 64 F.3d 1120, 1124-25 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996). The subsequent plain view of the digital scale in the Tahoe provided probable cause to believe contraband was present in the vehicle or on Jordan, and thus to arrest and search Jordan, and to subject the Tahoe to a canine sniff. See California v. Acevedo, 500 U.S. 565, 580 (1991); Conrod v. Davis, 120 F.3d 92, 96 (8th Cir.1997), cert. denied, 118 S. Ct. 1531 (1998). We also conclude the officers' treatment of Jordan in the moments between the stop and discovery of the scale did not amount to a de facto arrest, because such treatment was consistent with the officers' right to insure their safety and was not more intrusive than necessary. See United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998).

Jordan also argues that his 1989 conviction for being a prisoner in possession of contraband, see Mich. Comp. Laws Ann. § 800.281(4) (West 1998)--for which he had been sentenced to serve between one and five years imprisonment--was not a prior "felony drug offense" for purposes of sentencing enhancement under 21 U.S.C. § 841(b)(1)(A). See 21 U.S.C. § 802(44). We disagree. Jordan's reliance on United States v. Pazzanese, 982 F.2d 251 (8th Cir. 1992) ("catch-all" offense not directly prohibiting or restricting drug conduct, and involving no mental culpability with respect to substantive narcotics offense was not "felony drug offense") is misplaced. See United States v. Henderson-Durand, 985 F.2d 970, 975 n.8 (8th Cir.) (prior conviction for introducing drugs at penal institute was prior "felony drug offense"; Pazzanese distinguishable because Henderson-Durand violated law which specifically prohibited drug activity), cert. denied, 510 U.S. 856 (1993).

Accordingly, we affirm the judgment of the district court.

A true copy.

-3-

Attest:

    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.