**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

UIESE MAUSALI,
        *Defendant-Appellant.*

No. 08-50062

D.C. No.
CR-06-00545-
GHK-3

OPINION

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Submitted December 11, 2009\*
Pasadena, California

Filed January 11, 2010

Before: Cynthia Holcomb Hall and Barry G. Silverman,
Circuit Judges, and Suzanne B. Conlon,\*\* District Judge.

Opinion by Judge Silverman

---

\*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*The Honorable Suzanne B. Conlon, United States District Judge for the Northern District of Illinois, sitting by designation.

---

**COUNSEL**

Cristina Gabrielidis Lechman, Lechman & Lechman, San Diego, California, for the appellant.

Thomas P. O'Brien, United States Attorney; Christine C. Ewell, Assistant United States Attorney; Rodrigo A. Castro-Silva, Assistant United States Attorney; and Joseph N. Akrotirianakis, Assistant United States Attorney; Los Angeles, California, for the appellee.

---

**OPINION**

SILVERMAN, Circuit Judge:

We hold today, as have the Second, Third, and Eighth Circuits, that a defendant waives his claim of outrageous government conduct of which he is aware if he fails to assert it in a pretrial motion to dismiss. In this case, the defendant failed to raise outrageous government conduct before the district court prior to trial, during trial, or even after trial, despite knowing the facts supposedly supporting his claim months before trial began. Accordingly, he has waived this issue for purposes of appeal. We affirm.

## I.  Background

In May 2006, Special Agent John Carr of the Bureau of Alcohol, Tobacco, and Firearms, asked a confidential infor-

mant to let him know if the informant came across any crews interested in committing a home invasion robbery. Carr hoped to infiltrate an existing robbery crew by portraying himself as a drug courier who intended to pay off thousands of dollars in gambling debts by fencing drugs stolen from his employer's stash house. Within a few weeks, the informant put Carr in touch with Diego Osuna-Sanchez, who told Carr that he had an armed and experienced robbery crew interested in working with him. The crew consisted of Osuna-Sanchez, Juan Okamoto, Mokey Mose, and the defendant, Uiese Mausali.

Over the course of the next month, Carr met several times with Osuna-Sanchez, Okamoto, Mose, and Defendant to work out the details of the robbery; each member of the crew participated in the planning. On the morning of June 23, 2006, Okamoto, Mose, and Defendant met up with Carr at a warehouse parking lot to hash out the final details of the job on their way to the stash house. Before Okamoto, Mose, and Defendant could leave, however, ATF agents emerged and took them into custody. Agents found a loaded sawed-off shotgun, a bulletproof vest, and a roll of duct tape inside Defendant's car. Defendant later admitted in a post-arrest interview with local police that he had been involved in the plan to rob the stash house.

A grand jury returned an indictment against Osuna-Sanchez, Okamoto, Mose, and Defendant, charging Defendant with: (1) conspiracy to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846; (2) conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951; (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (4) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Both Okamoto and Osuna-Sanchez pled guilty; Mose and Defendant proceeded to trial.

Prior to trial, Mose moved to sever his and Defendant's trials, citing *Bruton v. United States*, 391 U.S. 123 (1968), and generally claiming the possibility that Mose and Defendant would pursue mutually antagonistic defenses; Defendant neither joined this motion nor filed his own. The district court denied Mose's severance motion. After the Government presented its case-in-chief, both Mose and Defendant challenged the sufficiency of the evidence and moved for acquittal, pursuant to Fed. R. Crim. P. 29. The district court denied both motions. Mose did not renew his severance motion.

During jury deliberations, the foreperson sent a note to the judge indicating that one of the jurors felt he could no longer remain impartial. With the consent of all parties, the district court questioned the foreperson outside the presence of the other jurors to determine the identity of the problematic juror, and then questioned that juror, also outside the presence of the other jurors; the juror explained that he could not fairly decide the case solely on the basis of the evidence and the court's instructions. The parties agreed and the district court determined that there was good cause to excuse the juror. At the Defendant's request, the district court also asked the juror whether he had discussed the basis of his inability to remain impartial with the other jurors, and the juror said he had not. Defendant did not ask the district court either to question the rest of the jury panel or to grant him a mistrial. Ultimately, the district court replaced the juror in question with an alternate, and Defendant declined the district court's invitation to seek additional relief beyond replacement of the juror and the renewal of deliberations. On January 22, 2007, the jury found Mose and Defendant guilty of all charges.

A presentence investigation report was prepared, which stated that Defendant's two prior felony drug convictions qualified him as a career offender under 21 U.S.C. §§ 841(b)(1)(A) and 851(a)(1), as well as § 4B1.1 of the Sentencing Guidelines, thereby triggering a mandatory minimum sentence of life imprisonment. Although Defendant stipulated

to his prior felony convictions, and conceded that he qualified for the statutory mandatory minimum of life imprisonment, he argued that neither the Guidelines nor the statutory career offender enhancements should apply because his prior crimes involved relatively small drug amounts. The district court ultimately rejected these arguments and sentenced Defendant to life in prison for the drug conspiracy charge. Defendant also received concurrent terms of 240 months' imprisonment on the robbery conspiracy charge and 120 months' imprisonment on the § 922(g) charge, plus a consecutive term of 120 months' imprisonment on the § 924(c) charge. Defendant timely appealed.

## II.   Discussion

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). For the following reasons, we affirm both Defendant's conviction and his sentence.

### A.   *Outrageous Government Conduct*

Defendant contends that the district court abused its discretion by failing to *sua sponte* dismiss the indictment in the face of the Government's purportedly outrageous conduct. Defendant claims that the Government violated his right to due process by supposedly directing the entire criminal enterprise from start to finish and by promoting a crime of violence. We do not reach the merits of Defendant's outrageous government conduct claim, because Defendant has waived this claim for purposes of appeal.

**[1]** The Second, Third, and Eighth Circuits require a defendant to assert outrageous government conduct of which he is aware before trial, pursuant to Fed. R. Crim. P. 12(b). *See, e.g.*, *United States v. Nunez-Rios*, 622 F.2d 1093, 1098-99 (2d Cir. 1980); *United States v. Pitt*, 193 F.3d 751, 760-61 (3d Cir. 1999); *United States v. Henderson-Durand*, 985 F.2d 970, 973-74 (8th Cir. 1993). The policy behind the rule is

sound. Outrageous government conduct claims involve alleged " 'defects in the institution of the prosecution' itself," questions of law that the court should decide before trial. *Nunez-Rios*, 622 F.2d at 1098 (quoting what is now Fed. R. Crim. P. 12(b)(3)(A)); *accord Pitt*, 193 F.3d at 760. Furthermore, pretrial assertion of the claim permits the trial court to "conduct a hearing with respect to any disputed issues of fact." *Nunez-Rios*, 622 F.2d at 1098. Indeed, the Federal Rules of Criminal Procedure require a defendant to "alleg[e] a defect in instituting the prosecution" before trial, Fed. R. Crim. P. 12(b)(3)(A), or else waive the objection on appeal, Fed. R. Crim P. 12(e); we apply a similar waiver rule to untimely claims of irregularities in grand jury proceedings. *See United States v. Kahlon*, 38 F.3d 467, 469 (9th Cir. 1994) ("[I]rregularities in grand jury proceedings are considered to be defects in the institution of the prosecution within the meaning of Rule 12(b)[ ] . . . . Failure to raise such defects before trial results in waiver of the objections." (internal quotations and citations omitted)).

**[2]** In this case, Defendant waived his outrageous government conduct argument by failing to raise it before trial. Although we may grant relief from a waiver if the defendant "present[s] a legitimate explanation for his failure to raise the issue in a timely manner," *United States v. Anderson*, 472 F.3d 662, 669-70 (9th Cir. 2006), Defendant has offered no explanation whatsoever, and we find none in the record. Defendant knew of the factual basis supporting his claim at least six months before trial began, when the indictment issued.[1]

---

[1]Defendant alleges that the Government "initiated the criminal activity and engineered the criminal enterprise from start to finish"; "suggested the idea of a home invasion robbery" and sought "to recruit individuals to itself to create a robbery 'crew' "; "supplied a motel room, a rental car, a bullet proof vest and duct tape"; withheld the location of the purported stash house from the crew; "suggested the robbery be for cocaine"; dictated the date of the robbery; provided the crew with a floor plan of the stash house; and "urged [him] and the others to perform the crime armed with guns." Not only do all of these material facts appear in the indictment itself, but Defendant had personal knowledge of these material facts.

Despite this, he raises outrageous government conduct for the first time on appeal and argues that the district court should have dismissed the case on this basis *sua sponte*. We hold that this issue is waived.

B.  *Defendant's Remaining Arguments*

**[3]** The remainder of Defendant's myriad claims are either waived or meritless. Defendant waived his argument that the district court erroneously failed to sever his and Mose's trials, because he neither moved for severance before trial nor joined Mose's pre-trial severance motion. *See* Fed. R. Crim. P. 12(b)(3)(D), (e); *United States v. Yarbrough*, 852 F.2d 1522, 1531 (9th Cir. 1988). We decline to excuse these failures on Defendant's theory that it would have been an "unnecessary formality" for him to move for severance in light of the district court's denial of Mose's motion. Although we may excuse a defendant's failure to *renew* his severance motion at the conclusion of the government's case-in-chief as an unnecessary formality, *see United States v. Sullivan*, 522 F.3d 967, 981 (9th Cir. 2008), we have never excused an outright failure to raise the issue on that basis, and we will not do so here.

**[4]** Moreover, the district court did not commit plain error by failing to question each member of the jury for taint after dismissing and replacing the juror who could no longer continue deliberating. Upon learning of one juror's potential bias, the district court promptly and appropriately convened a hearing on the matter. *See United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993). The meticulous and highly experienced district judge thoroughly questioned the juror—who testified that he had not shared the basis of his problem with the other jurors—and properly replaced the juror with an alternate. None of the parties objected to this action or requested anything further, even when given the opportunity to do so. The district court's factual determination that the partial juror had not tainted the rest of the panel was not clearly erroneous, *see*

*United States v. Elias*, 269 F.3d 1003, 1020-21 (9th Cir. 2001), nor was there any plain error.

**[5]** In addition, existing circuit precedent forecloses Defendant's constitutional challenges to the statutory mandatory minimum life sentence he received for being a career drug offender, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851(a)(1). *See United States v. Jensen*, 425 F.3d 698, 707 (9th Cir. 2005) (rejecting argument that 21 U.S.C. § 851(a)(1) impermissibly vests sentencing discretion in the executive rather than the judicial branch and "infringes on the ability of the district court to impose a sentence of less than life imprisonment"); *id.* at 708 (rejecting argument that "the sentencing scheme imposed a sentence that was not 'proportional' to the crime . . . in violation of the Eighth Amendment," in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)); *see also United States v. Van Winrow*, 951 F.2d 1069, 1071 (9th Cir. 1991).

Finally, because Defendant rightly concedes that his prior felony drug convictions alone triggered § 841(b)(1)(A)'s statutory mandatory minimum life sentence, and because the district court sentenced him to life under the statute, we need not resolve Defendant's argument that his prior convictions were insufficient to trigger the Guidelines' career offender enhancement, U.S.S.G. § 4B1.1.

## III.    Conclusion

For the foregoing reasons, the judgment and sentence are AFFIRMED.