**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLES SODERMAN,

Defendant - Appellant.

No. 10-10023

D.C. No. 2:09-cr-00321-FJM-1

MEMORANDUM[*]

---

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted March 1, 2011
Tempe, Arizona

Before: CANBY, HAWKINS, and CLIFTON, Circuit Judges.

Charles Soderman appeals his conviction. We affirm.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

## I.    Entrapment

Soderman's first argument is that the court erred in not dismissing the indictment or granting his motion for a judgment of acquittal because he was entrapped as a matter of law.  Acquittal based on entrapment requires finding that (1) the government induced him to commit the crime, and (2) he was not predisposed to commit the crime prior to his interactions with law enforcement. *United States v. Thickstun*, 110 F.3d 1394, 1396 (9th Cir. 1997).  Soderman did not object to the instructions given to the jury on the subject of entrapment, and he was found guilty by the jury.  When a defendant argues on appeal that a conviction should be overturned because he was entrapped as a matter of law, the court must determine whether "viewing the evidence in the light most favorable to the government, no reasonable jury could have found in favor of the government as to inducement or lack of predisposition." *United States v. Poehlman*, 217 F.3d 692, 698 (9th Cir. 2000).

Soderman has met his burden of showing that no reasonable jury could have found in favor of the government on the question of inducement.  Undercover agents suggested to Soderman the idea of engaging in criminal conduct.  Merely introducing the idea of a crime does not constitute inducement.  *See Sherman v. United States*, 356 U.S. 369, 372 (1958) ("[T]he fact that government agents

2

'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment." (quoting *Sorrells v. United States*, 287 U.S. 435, 441 (1932)). However, here the government went much farther.

"[A]t bottom the government induces a crime when it creates a special incentive for the defendant to commit the crime." *Poehlman*, 217 F.3d at 698. It can create that special incentive through "government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994); *see also Poehlman*, 217 F.3d at 701 (inducement consists of "opportunity *plus* something else-typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." (internal quotation marks omitted)). The conversations between Soderman and the agent show the government used several of these tactics. Over thirteen months of online conversations with Soderman, government agents encouraged him to engage in criminal activity. The agent played on their supposed friendship, suggested that Soderman would become "part of our family" if he engaged in the criminal activity, and told him that he would also get to meet others to whom he could

relate. The agent also tried to make Soderman feel guilty for not engaging in the criminal conduct. As we have noted, "even very subtle governmental pressure, if skillfully applied, can amount to inducement." *Poehlman*, 217 F.3d at 701. Given the evidence before them, no reasonable jury could have concluded that Soderman was not induced.

Even though Soderman was induced, he has failed to establish entrapment as a matter of law because, taking the evidence in the light most favorable to the government, a reasonable jury could have concluded that he was predisposed to commit this crime. We have identified five factors for evaluating predisposition: "(1) the defendant's character and reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." *Thickstun*, 110 F.3d at 1396. No one factor is conclusive, but "the defendant's reluctance is the most important." *Id.* at 1397. Also, while the court's focus is on whether there was predisposition prior to engagement with the government, we can look at post-engagement statements of the defendant to the extent they demonstrate his pre-engagement disposition. *Id.* ("Evidence of predisposition may arise both before the government's initial contact and during the course of dealings.").

Three of the factors favor Soderman. There was significant inducement by the government, the initial suggestion for the criminal activity came from the government, and Soderman did not engage in the activity for profit. However, none of these factors is a particularly strong consideration here. While the government initially suggested the criminal activity, Soderman quickly expressed interest in engaging in it. Furthermore, the inducement by the government occurred only after Soderman expressed his interest in engaging in the crime. Finally, Soderman had non-monetary reasons for engaging in the criminal activity.

But there was more than sufficient evidence of the first and fourth factors that a reasonable jury could have found Soderman predisposed. The jury heard and saw substantial evidence of Soderman's previously expressed views not only condoning this type of criminal activity, but moreover implying, if not outright admitting, he had previously engaged in such illicit conduct himself. While evidence was also presented at trial suggesting these past statements were mere bragging, it was up to the jury to decide whether to believe that. Soderman's previous statements provided ample evidence of predisposition. *Cf. Poehlman*, 217 F.3d at 703. We cannot say as a matter of law that a reasonable jury could not have relied on that evidence to conclude that there was predisposition.

There was also ample evidence of a lack of reluctance by Soderman.  After the agent first mentioned the possibility of committing the crime, Soderman pursued the topic and shortly thereafter expressed his interest in pursuing the criminal activity.  *See United States v. Mendoza-Prado*, 314 F.3d 1099, 1102 (9th Cir. 2002) (no entrapment where "Defendant showed no reluctance to commit the crimes" and "[w]ith very little inducement, he readily agreed to look for the cocaine").  While it took thirteen months from the initial government contact before he engaged in the crime, delay does not have to mean reluctance.  The online chats between Soderman and the agent reveal that the delay was not necessarily caused by Soderman's reluctance to commit the crime, but could rather have been caused by a series of unrelated issues which, Soderman wrote at the time, made committing the crime impossible.  Again, we cannot conclude that a reasonable jury could not take those statements at face value. Throughout the thirteen months Soderman repeatedly and consistently expressed his desire to commit the crime.  At no time in the online chats did he express disgust or disinterest in the criminal activity.  *Cf. Poehlman*, 217 F.3d at 704 (lack of predisposition where defendant "pushed the conversation in the opposite direction").

6

Soderman relies on *Jacobson v. United States*, 503 U.S. 540 (1992), but that case is distinguishable. In *Jacobson* the predisposition evidence consisted of an action taken before it was made illegal and statements he made to undercover agents. In regard to the first, the Court noted that "evidence of predisposition to do what once was lawful is not, by itself, sufficient to show predisposition to do what is now illegal." *Id.* at 551. Here, by contrast, there was evidence that suggested Soderman had engaged in conduct which was illegal at the time. In regard to the statements Jacobson made during the investigation, the Court described these as "fantasies." *Id.* Soderman's comments to the undercover agent include bragging about actual prior illegal conduct and numerous statements indicating his strong desire to engage in the future illegal conduct proposed by the agent. As noted above, we cannot say that a reasonable jury could not conclude that those statements reflected actual conduct, rather than mere braggadocio.

The jury in this case appeared to have approached its task carefully, and it found Soderman guilty. We cannot say that its conclusion was unreasonable. On the basis of the evidence presented to it, a reasonable jury could have found Soderman predisposed to commit the crime in question. There was no entrapment as a matter of law.

## II.    Outrageous Government Conduct

Soderman also argues, for the first time on appeal, that the government's conduct in exhorting him to engage in the criminal conduct was so outrageous that it violated due process. A claim of outrageous government conduct is treated as a motion alleging a defect in instituting the prosecution under Fed. R. Crim. P. 12(b). *United States v. Mausali*, 590 F.3d 1077, 1080 (9th Cir. 2010). Under Rule 12, failure to raise the claim before trial results in its being waived. *Id.* Soderman has offered no legitimate explanation for his failure to raise the claim that would warrant us granting relief from the waiver. Even if the claim were not waived, while the government's conduct here was questionable, it was not so outrageous that it violated due process.

## III.    Testimony of Weller

Soderman next argues that the court erred by allowing the testimony of Weller linking him to posts made on websites, which he claims was improper expert testimony. Weller never gave an opinion that would require "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. Rather, her testimony consisted of describing online posts written by an individual using specific pseudonyms and describing how she used personal information given in those posts to connect Soderman to the pseudonyms by using Internet searches.

8

At most Weller's "expertise" was in knowing where to find identifying information online and which search engines to use to connect that information to an actual person. While this might not be something everyone knows how to do, Weller's "observations [were] common enough and require[d] such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinions." *See United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995). The only opinion she gave was her belief that Soderman was the author of the posts. This opinion, which was based on comparing the information in the posts to information she gathered on Soderman, was "rationally based on the perception of the witness." Fed. R. Evid. 701.

Soderman also raises objections to Weller's testimony on the grounds of lack of foundation and hearsay. These objections are also unfounded. The district court policed Weller's testimony and sustained objections when her testimony did in fact lack foundation or was based on hearsay. The testimony Weller was allowed to give consisted of her observations about the posts and explaining how she linked those to Soderman. None of this testimony was hearsay or lacked foundation. The court did not abuse its discretion by allowing her testimony.

## IV.    Voir Dire

Finally, Soderman argues the district court abused its discretion by rejecting a proposed jury questionnaire that inquired about prospective jurors' views on one subject and also refusing to ask about their views on that subject during the oral voir dire.  The district court is required to conduct voir dire "in a manner that permits the informed exercise of both the peremptory challenge and the challenge for cause." *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981).  We have held that "[i]f an inquiry requested by counsel is directed toward an important aspect of the litigation about which members of the public may be expected to have strong feelings or prejudices, the court should adequately inquire into the subject on voir dire." *Id.*  While it may be the case that members of the public have strong feelings or prejudices about the subject at issue, it was not an important aspect of the litigation, which was focused on the entrapment question.  Therefore, the failure to inquire specifically into that subject did not amount to an abuse of discretion by the district court.

**AFFIRMED**.